IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

| | | |
|---|---|---|
| MICHELLE MARIE SCHREINER, | ) | |
| | ) | |
| Plaintiff, | ) | 3:15-CV-00607-JO |
| | ) | |
| v. | ) | OPINION AND ORDER |
| | ) | |
| CAROLYN W. COLVIN, Acting Commissioner of Social Security, | ) ) ) | |
| | ) | |
| Defendant. | ) | |

JONES, J.,

Plaintiff Michelle Schreiner ("Schreiner") appeals the Commissioner's decision denying her application for disability insurance benefits under Title II of the Social Security Act. The court has jurisdiction under 42 U.S.C. § 405(g). I affirm the Commissioner's decision.

**PRIOR PROCEEDINGS**

Schreiner filed a Disability Benefits application under Title II, alleging disability beginning March 15, 2008, due to diabetes, hypertension, and mental impairments. Admin. R. 20-21. The ALJ applied the five-step analysis outlined in the regulations to determine whether Schreiner was disabled. Admin. R. 18-19. Schreiner was diagnosed with diabetes mellitus type 1 at age 10, and subsequently received diagnoses for hypertension, and cognitive disorder not otherwise specified. Admin. R. 20. The ALJ found her hypertension was well-controlled and did not adversely affect her ability to perform basic work activities. Admin. R. 20. He found that her diabetes and cognitive

disorder constituted severe impairments that limited her ability to perform basic work activities. Admin. R. 32. The ALJ then determined that, despite her impairments, Schreiner possessed the residual functional capacity ("RFC") to do a range of light work in routine and predictable environments where she could avoid even moderate exposure to work with machinery or moving parts. Admin. R. 23. According to the RFC, Shreiner could stand or walk for six of eight hours in a workday with normal breaks, and would be limited to frequent, not constant, handling with her nondominant hand. Admin. R. 23. At step 4 of his analysis, the ALJ found these restrictions made her unable to perform past relevant work. Admin. R. 31. A vocational expert ("VE") testified that Schreiner would be able to perform the job requirements of light and sedentary occupations such as a cashier, a small product assembler, and medical billing employee, which together represent more than a million jobs in the national economy. Admin. R. 32. Thus, the ALJ concluded that Schreiner was not disabled within the meaning of the Social Security Act. Admin. R. 32.

## STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if it is based on proper legal standards and the findings of fact are supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g); *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). Under this standard, the Commissioner's factual findings must be upheld if supported by inferences reasonably drawn from the record even if evidence exists to support another rational interpretation. *Batson*, 359 F.3d at 1193; *Andrews v. Shalala*, 53 F.3d 1035, 1039–40 (9th Cir. 1995).

\\\

\\\

## DISCUSSION

### I. Claims of Error

The claimant bears the burden of showing that the ALJ erred and that any error was harmful. *McLeod v. Astrue*, 640 F.3d 881, 886-87 (9th Cir. 2011). Schreiner claims that the ALJ erred in four ways. First, Schreiner claims the ALJ wrongfully found her not fully credible regarding the severity and functional impact of her impairments. Second, she contends the ALJ improperly discounted the opinions of Dr. Anne M. Weinsoft, M.D. and Cheryl S. Brischetto, Ph.D. regarding her functional limitations and her ability to voluntarily comply with diabetes treatment. Third, Schreiner contends the ALJ's RFC assessment failed to account for her moderate limitations in concentration, persistence, or pace. She contends these errors were harmful because they led the ALJ to assess her with an RFC that did not accurately reflect all of her functional limitations. Fourth, she contends the ALJ elicited testimony from the VE using hypothetical assumptions that did not reflect her limitation to perform only one and two step commands. She contends this error was harmful because it led the VE to identify occupations requiring level three reasoning as jobs she could perform, but such jobs are beyond her capacity.

### II. Credibility Determination

In her written application, Schreiner alleged that diabetes caused her blood sugar levels to fluctuate and adversely affected her ability to talk, hear, see, complete tasks, concentrate, understand, follow instructions, remember, use her hands, and do any kind of physical work. Admin. R. 198, 203. She claimed that she had a hard time with stress, "her body did not like changes," her brain "shut[] down" when her blood sugar levels were off, and she could pay attention for about an hour before her body needed to take a break. Admin. R. 203. During her administrative hearing, she

stated that frequent diabetic reactions and the need to take frequent breaks made maintaining employment difficult. Admin. R. 199.

The ALJ accepted many of Schreiner's allegations and believed her medically determinable impairments produced some degree of the symptoms she claimed. For example, the ALJ's RFC assessment acknowledged a limited capacity for physical exertion, use of the hands, and work in an unpredictable environment. The ALJ discounted Schreiner's credibility regarding the intensity, persistence, and limiting effects of her impairments. Admin. R. 24. He did not believe her allegations of limitations exceeding those in the RFC assessment or her claim that she could not perform any work.

An adverse credibility determination must include specific findings supported by substantial evidence and a clear and convincing explanation. *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1160 (9th Cir. 2008); *Smolen v. Chater*, 80 F.3d 1273, 1281–82 (9th Cir. 1996). The findings must be sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony. *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008). In assessing credibility, an ALJ must consider all the evidence in the case record, including the objective medical evidence, the claimant's treatment history, medical opinions, daily activities, work history, the observations of third parties with knowledge of the claimant's functional limitations, and any other evidence that bears on the consistency and veracity of the claimant's statements. *Tommasetti*, 533 F.3d at 1039; *Smolen*, 80 F.3d at 1284.

The ALJ's written decision shows that he found Schreiner's alleged limitations to be inconsistent with her work history. Admin. R. 28. A significant work history may support an adverse credibility finding with respect to a claimant's professed inability to work. *Thomas v.*

*Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002). He noted that Schreiner successfully worked at Fred Meyer for six years and that she testified that she actively sought employment during her social security application process. Admin. R. 28, 199. The ALJ properly noted that Schreiner had received a job offer in December, 2011, but despite this apparent ability to work, continued to wait for her social security application to be processed. Admin. R. 28. Furthermore, he noted that she obtained a medical billing and insurance certificate from Everest College, achieving a 3.0 GPA in the program, which supports his contention that her concentration and ability to understand were not as limited as claimed. Admin. R. 529. He noted that, though Schreiner acknowledged that she struggled to control her diabetes, she continued to search for work. He concluded that this activity demonstrated that she believed that she could work despite her limitations. Admin. R. 28. Indeed, Schreiner explicitly told Dr. Brischetto that she believed she would be able to work in a low-stress environment. Admin. R. 529. Because he gave specific reasons to support his conclusion that Schreiner's work history was inconsistent with the alleged level of functional impairment, he properly found her testimony not credible.

The ALJ supported his adverse credibility inference with evidence that Schreiner engaged in daily activities that showed she was not as limited as she claimed. Admin. R. 25. An ALJ may find that activities of daily living detract from a claimant's subjective statements when the activities contradict the subjective claims. *Orn v. Astrue*, 495 F.3d 625, 638 (9th Cir. 2007). Schreiner was reportedly able to clean, shop, care for her cat, cook meals, and independently perform self care and hygiene. Admin. R. 199, 531. The ALJ noted that she drove a car without assistance and was able to manage money and handle a savings account. Admin. R. 531, 532. Furthermore, he pointed out that she spent a good deal of time at the library where she used a computer to perform research.

-5-    OPINION AND ORDER

Admin. R. 531. The ALJ could rationally conclude that these activities were inconsistent with Schreiner's subjective claims of debilitating limitations in attention, focus, memory, persistence with tasks, use of her hands, walking, bending, and so forth. Accordingly, the ALJ rationally drew an adverse inference as to her credibility based on her daily activities. *Molina v. Astrue*, 647 F.3d 1104, 1113 (9th Cir. 2012).

The ALJ noted that Schreiner's noncompliance with her treatment further discredited her statements. He cited ample evidence in the record demonstrating Schreiner's poor compliance, including references to refusal to eat regularly and take insulin as prescribed. Admin R., 257, 273, 448, 463, 475, 492, 662, 672, 693, 694. A claimant's unexplained failure to seek treatment or follow a course of treatment may cast doubt on the sincerity of his disability claims. *Flaten v. Sec'y of Health & Human Serv.*, 44 F.3d 1453, 1464 (9th Cir. 1995). When a claimant makes subjective claims of disabling symptoms, but fails to comply with prescribed treatment, an ALJ may reasonably find the subjective statements unjustified or exaggerated. *Orn v. Astrue*, 495 F.3d at 639; *Tonapetyan v. Halter,* 242 F.3d 1144, 1147-48 (9th Cir. 2001).

Schreiner contends her noncompliance was an improper basis for the ALJ to discount her credibility because her cognitive impairments rendered her incapable of adhering to treatment. The ALJ identified evidence suggesting that the opposite was true, however, *i.e.* that noncompliance led to her mental impairments. For instance, Schreiner stated that her ability to concentrate and remember only declined when her blood sugars were low and that she functioned better when her blood sugars were within a normal range. Admin. R. 533. A psychological exam suggested that blood sugar instability caused her mental disorders, rather than the other way around. Admin. R. 533. In short, the evidence reasonably supports an inference that Schreiner first chose not to adhere

-6-    OPINION AND ORDER

to her treatment regimen, which led to lowered blood sugar levels which in turn led to decreased mental functions. The Commissioner's factual findings must be upheld if supported by inferences reasonably drawn from the record even if evidence exists to support another rational interpretation. *Batson*, 359 F.3d at 1193. The ALJ reasonably drew an adverse inference as to Schreiner's credibility from the evidence of her noncompliance, even if the evidence could be interpreted differently, in a manner more favorable to her.

The ALJ's findings are supported by substantial evidence in the record and are sufficiently specific for me to conclude that the ALJ did not arbitrarily discredit Schreiner's statements. His reasoning is clear and convincing and the credibility determination will not be disturbed. *Tommasetti*, 533 F.3d at 1039; *Carmickle*, 533 F.3d at 1160.

### III.     Opinions of Medical and Mental Health Care Providers.

*Dr. Anne M. Weinsoft, M.D.*

Schreiner established primary care with Dr. Weinsoft in August 2008, primarily for ongoing diabetes, but treatment records reflect that a clinic pharmacist and other practitioners provided most of her care. Admin. R. 371. Dr. Weinsoft noted that Schreiner's control of her diabetes was poor and that she was "in dire need of diabetes education" to improve her compliance with prescribed medications and treatment instructions. Admin. R. 368, 372. In September 2009, Dr. Weinsoft observed that Schreiner remained cavalier about taking insulin and food as scheduled for proper diabetes control. Admin. R. 324-325. In June 2011, Dr. Weinsoft noted that Schreiner's diabetes remained under poor control, due mainly to lack of adherence to her treatment regimen, resistence to following treatment instructions, and lack of collaboration with her treatment providers. Admin.

R. 271, 273, 276. In July 2013, Dr. Weinsoft again indicated that Schreiner was not adherent to recommended insulin regimen, diet, or safety precautions. Admin. R. 656.

Based on this treatment history, Dr. Weinsoft offered two opinions regarding Schreiner's limitations. In July 2011, Dr. Weinsoft authored a letter stating that Schreiner could not return to work involving any "physical labor" due to "frequent episodes of low blood sugar" which would make that type of work "dangerous and impossible to perform." Admin. R. 253. The ALJ did not reject this opinion, giving it "some weight" in his decision. Admin. R. 29. It appears the ALJ incorporated this opinion into his RFC assessment by finding Schreiner limited to physical exertion in the light and sedentary range. Admin. R. 23.

In September 2013, Dr. Weinsoft completed a questionnaire provided by Schreiner's lawyer to support her social security disability claim. Admin. R. 636. Dr. Weinsoft said Schreiner was probably limited to some degree in work activities such as lifting, carrying, walking, standing, sitting, pulling and pushing, kneeling, crouching and so forth. Dr. Weinsoft conceded, however, that she did not have the proper training to evaluate Schreiner's capacity in such activities. Admin. R. 637. She said Schreiner suffered from depression and had extreme difficulty with social functioning. Admin. R. 638. She also opined that fluctuations in Schreiner's blood sugar levels caused marked impairment in her ability to concentrate, persist, or maintain pace on tasks. Admin. R. 638. She said Schreiner's activities of daily living were moderately limited by back pain, concentration problems, and financial difficulties. Admin. R. 639. Dr. Weinsoft opined that job stress would have an adverse impact on Schreiner's blood sugar stability and be likely to increase her symptoms. Admin. R. 639. She said that inconsistent blood sugar levels and side effects from insulin would interfere with her ability to sustain attention and concentration sufficient to perform simple tasks up to eight hours a

week. She also claimed Schreiner would miss sixteen hours of work per month due to medical appointments. Admin. R. 639. Dr. Weinsoft said she believed Schreiner was "genuinely disabled" and "truly in need of assistance from Social Security." Admin. R. 640.

The ALJ gave Dr. Weinsoft's 2013 opinion limited weight. He accepted that Schreiner required work in a routine and predictable environment to avoid job stress, but discounted her statements that Schreiner would be unable to maintain attention and concentration sufficiently to perform routine tasks and that she would require excessive doctor visits, assuming she complied with recommended treatment, diet, and safety precautions. Admin. R. 28-29. An ALJ may discount a medical opinion, even that of a treating physician, for clear and convincing reasons supported by substantial evidence or if the opinion is contradicted by other medical opinions for specific and legitimate reasons. *Tommassetti v. Astrue*, 533 F.3d at 1041; *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005); *Thomas v. Barnhart*, 278 F.3d at 957. An ALJ need not accept the opinion of an examining physician that is conclusory and unsupported by clinical findings. *Bayliss*, 427 F.3d at 1216.

The ALJ outlined clear and convincing reasons for discounting Dr. Weinsoft's opinion. Key to his analysis is the fact that Schreiner successfully maintained a job at Fred Meyer for over six years while suffering from the same impairments and failing to adhere to her prescribed treatment regimen and recommended diet. This clearly supports the ALJ's conclusion that Schreiner's limitations were less severe than suggested by Dr. Weinsoft. Admin. R. 206. Moreover, the ALJ notes that Schreiner successfully completed a medical billing training program at Everest College with a 3.0 GPA after her work at Fred Meyer ended. Admin. R. 31. Furthermore, during a psychological exam, Schreiner also stated that she believed that she would be able to work in a job

that allowed her to take breaks and did not impose a high level of stress. Admin. R. 529. Schreiner also attested to searching for jobs or volunteering on a daily basis in her Social Security Application. Admin. R. 199, 640. This evidence contradicted Dr. Weinsoft's opinion and gave the ALJ an adequate basis to limit the weight he attributed to her statements.

Schreiner contends that the ALJ failed to consider her poor job performance while working at Fred Meyer. She said she suffered numerous difficulties from her impairments while working at Fred Meyer, and her employer's unwillingness to accommodate her disease culminated in her termination. She claims her poor performance supported Dr. Weinsoft's opinion regarding her limitations. To support this claim, Schreiner produced only her own subjective statements, which the ALJ found lacking in credibility. Her subjective description of her job difficulties and termination were contradicted by her own testimony that she was terminated for insubordination when she refused a supervisor's order to clock out and return home to properly treat a diabetic reaction. Admin. R. 23.

Schreiner also asserts that the ALJ wrongly discounted Dr. Weinsoft's opinion that significant psychological problems would prohibit Schreiner from maintaining employment. Dr. Weinsoft repeatedly noted that she expressed inappropriate judgment and tangential speech during medical examinations. Admin. R. 702, 692, 691, 689, 683, 680, 678, 669, 672. Notably, however, Dr. Weinsoft also found that Schreiner had normal behavior and thought content. Admin. R. 690, 681, 684, 669, 702. Contrary to Dr. Weinsoft's opinion of Schreiner's psychological problems, Dr. Brischetto performed a psychological evaluation and concluded that Schreiner's thought processes were generally organized and logical, that she had insight into her present distress, that she did well on attention screening matters, and that she had some insight and capacity for common sense,

reasoning, and judgment. Admin. R. 532-534. In short, the record reflects clear inconsistencies between the debilitating levels of impairment suggested by Dr. Weinsoft and the levels of impairment supported by the record as a whole. The Commissioner's factual findings must be upheld if supported by inferences reasonably drawn from the record even if evidence exists to support another rational interpretation, and accordingly must be upheld here. *Batson*, 359 F.3d at 1193.

Schreiner also contends that the ALJ failed to acknowledge Dr. Weinsoft's suggestion that her noncompliance with treatment resulted from her mental health issues. Had he given this opinion full weight, she argues, the ALJ would have found that she was incapable of adherence to treatment and that the complications of uncontrolled diabetes were not preventable, leaving her unable to work. Schreiner relies on progress notes from Dr. Weinsoft stating that psychological issues "may" play a big role in Schreiner's noncompliance, that Dr. Weinsoft was concerned about Schreiner's ability to consistently manage her diabetes treatment, and that she was "working to resolve" psychiatric issues to better facilitate treatment adherence. Admin. R. 672, 691. Indeed, many of Dr. Weinsoft's exam notes report that Schreiner had little insight into her disease, possessed odd beliefs regarding insulin treatment, and was very resistant to redirection or education. Admin. R., 269, 349, 473. Dana Pilchick, a case manager, stated that stress led Schreiner to abandon self-care. Admin. R. 693, 698. Schreiner claims that the ALJ ignored this evidence and mistakenly concluded that Schreiner chose not to comply with her treatment when in actuality cognitive disorders prevented her from doing so.

Treatment records do not attribute Schreiner's noncompliance to cognitive limitations, however. Dr. Weinsoft noted episodes of noncompliance due to "losing her meter" and "having

other life issues that take priority," rather than cognitive impairment. Admin. R. 663. Similarly, Lauren Hansen, Pharm. D, ("Hansen") stated that the "patient has compliance issues due to family drama" and relationship issues. Admin. R. 695. Moreover, evidence demonstrates that Schreiner was capable of complying with treatment because she experienced periods of compliance. In 2011, for instance, Dr. Weinsoft noted that Schreiner had "figured out how to plan insulin and meals around breaks" while doing a volunteer job. Admin R. 254. The ALJ also cited records showing that Schreiner was complying with treatment most of the time. Admin. R. 25, 447-449.

Finally, Schreiner argues that the ALJ wrongfully discounted Dr. Weinsoft's statement that Schreiner was "genuinely disabled" and in need of assistance from social security. Admin. R. 640. This statement does not identify specific functional limitations or work related activities that Schreiner could not perform. Accordingly, it is not a medical opinion as much as a vocational opinion for which Dr. Weinsoft has no special qualification. Notably, Dr. Weinsoft explicitly admitted that she was not trained to evaluate specifics regarding Schreiner's level of impairment. Admin. R. 637. Furthermore, the ALJ correctly supported his evaluation of Dr. Weinsoft's opinion with evidence of Schreiner's work at Fred Meyer, volunteer experience, daily activities, and educational endeavors, all of which suggest Schreiner was not as limited as Dr. Weinsoft suggested. Admin. R. 29-31. Accordingly, the ALJ correctly discounted Dr. Weinsoft's opinion as to the ultimate issue of disability.

### *Dr. Cheryl Brischetto, Ph.D.*

In April 2012, Dr. Brischetto performed a consultative psychodiagnostic evaluation at the request of the Social Security Administration. Admin. R. 538. Schreiner told Dr. Brishcetto she could work if her job was not stressful and had a routine so she could plan when to eat and take

-12-   OPINION AND ORDER

insulin. Admin. R. 25. Notably, the ALJ incorporated these limitations into his RFC assessment. Admin. R. 23. In her mental status evaluation, Dr. Brischetto found Schreiner fully oriented and able to follow one and two step commands. Admin. R. 532, 534. Schreiner contends that the ALJ erroneously failed to include a limitation to one and two step tasks in the RFC assessment. She notes that the jobs identified by the VE require level three reasoning and would be precluded if the RFC properly limited her to one and two step tasks.

This argument cannot be sustained because Dr. Brischetto did not indicate that one and two step commands marked the upper limit of Schreiner's capability. Dr. Brischetto did not complete a comprehensive evaluation of Schreiner's reasoning abilities, or specifically test her ability to perform level three reasoning. Admin. R. 532-534. The ALJ considered Dr. Brischetto's opinion and found that it showed Schreiner performed well on the tasks she was asked to perform, despite noncompliance with treatment before the examination. Admin. R. 22. The evaluation simply did not address the limits of Schreiner's reasoning ability, particularly when complying with treatment. The ALJ drew reasonable inferences from the evidence and articulated specific reasons to support his evaluation of Dr. Brischetto's opinion. Accordingly, his evaluation will not be disturbed.

### VI.    RFC Assessment

Schreiner argues that the ALJ erred by not including any explicit limitations in concentration, persistence, or pace in his RFC assessment. The ALJ acknowledged Schreiner's subjective self-evaluation that she could "concentrate for an hour before taking a break" during step two of his analysis, but did not incorporate this limitation into his RFC assessment. Admin. R. 22. As discussed previously regarding the ALJ's credibility determination, the ALJ noted evidence suggesting Schreiner was not as limited as she subjectively claimed. For example, he noted that

Schreiner achieved a 3.0 GPA in her medical billing program and that Dr. Brischetto found her able to sustain concentration and focus of attention. Admin. R. 22. Indeed the only evidence supporting Schreiner's alleged attention difficulties is her subjective claim which the ALJ found lacking in credibility. An ALJ is not required to incorporate additional limitations he finds unsupported by the record or supported only by discredited evidence. *Batson*, 359 F.3d at 1197–98; *Osenbrock v. Apfel*, 240 F3d 1157, 1163–65 (9th Cir 2001); *Magallanes v. Bowen*, 881 F2d 747, 756–57 (9th Cir. 1989). The ALJ's RFC assessment reflects the limitations he found supported by the evidence and it will not be disturbed based solely on Schreiner's subjective statement.

### VII. Vocational Evidence

At step five, the Commissioner must show that work exists in the national economy that can be performed by a person with the claimant's RFC. *Andrews*, 53 F.3d at 1043. The Commissioner can satisfy this burden by eliciting the testimony of a vocational expert with a hypothetical question that sets forth all of the claimant's limitations. The assumptions in the hypothetical question must be supported by substantial evidence. *Andrews*, 53 F.3d at 1043.

Here, the ALJ elicited the VE's testimony by posing hypothetical assumptions based on his RFC assessment that contained the limitations the ALJ found credible and supported by substantial evidence. *Bayliss*, 427 F.3d at 1217-8. Admin. R. 24. The VE testified that a person with Schreiner's RFC could perform semi-skilled, sedentary work as a medical biller, and unskilled work as a medical cashier or small parts assembler. These occupations represent over a million jobs in the national economy. Admin. R. 72-73. The ALJ relied on that testimony to conclude that Schreiner was not disabled. Admin. R. 23.

By restating her challenges to the ALJ's evaluation of the evidence, Schreiner argues that the VE's testimony has no evidentiary value because the hypothetical assumptions did not reflect all of her limitations. In particular, Schreiner again raises Dr. Brischetto's opinion regarding her ability to perform one and two step commands. In this iteration of the argument, Schreiner contends cases such as *Zavalin v. Colvin*, 778 F.3d 842, 846 (9th. Cir. 2015), required the ALJ to determine whether such a limitation is consistent with level three reasoning before relying on the VE's testimony that she could perform jobs requiring level three reasoning. Schreiner's reliance on *Zavalin* is misplaced, however, because the factual circumstances are distinguishable. In *Zavalin*, the ALJ found that the claimant was limited to simple jobs based on evidence that his mental impairments left him unable to deal with problems involving concrete variables or to "apply commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic form." *Zavalin*, 778 F.3d. at 844. The court concluded that the ALJ should have determined whether these limitations were consistent with level three reasoning before determining that Zavalin could perform jobs requiring level three reasoning. Here, the ALJ did not limit Schreiner to simple jobs and the evidence does not suggest the degree of mental impairment that Zavalin suffered.

Finally, even if Schreiner were correct that the ALJ should have limited her RFC to level three reasoning based on Dr. Brischetto's opinion, the alleged error would have been harmless. The VE identified over 500,000 jobs in the occupation of small parts assembler requiring only level two reasoning. Admin. R. 32. Schreiner does not contest her ability to carry out level two reasoning.

As discussed more fully previously, in assessing Schreiner's RFC, the ALJ properly included the limitations he found supported by the record and excluded limitations supported only by discredited evidence. The hypothetical assumptions the ALJ used to elicit testimony from the VE

accurately reflected his RFC assessment. *Batson*, 359 F.3d at 1197–98. Accordingly, Schreiner's challenge to the vocational testimony cannot be sustained. The ALJ properly relied on the VE's testimony in determining that Schreiner was not disabled within the meaning of the Social Security Act.

## CONCLUSION

For the foregoing reasons, the Commissioner's final decision is AFFIRMED.

DATED this 1st day of July, 2016.

Robert E. Jones, Senior Judge
United States District Court